OF THE

# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1899.

---

THE STATE v. GRANT, Appellant.

Division Two, October 31, 1899.

1. **Feloniously:** UNDEFINED. Where the use of the word "feloniously" in an instruction is unnecessary, and neither adds to nor detracts from its force, it is not necessary to define it, nor does its use vitiate the instruction.

2. **Deadly Weapon:** ASSUMED TO BE. Where an instruction tells the jury that if they believed that defendant took the life of deceased by stabbing her with a knife and that said knife was a deadly weapon, etc., it does not assume that said pocket knife was a deadly weapon. Especially is this the case when the jury are told in another instruction that if they find defendant killed deceased by a thrust with a knife not likely to kill, and that the question whether the knife was or was not a deadly weapon, is a question of fact for the jury to determine, etc.

3. **Just Cause of Provocation:** UNDEFINED. Where the evidence reveals no cause of provocation for the murder it is not error to fail to define the words "just cause of provocation."

(57)

State v. Grant.

4.  **Deliberately:** DEFINED. An instruction that says that "deliberately means in a cool state of blood; it does not mean brooded over or reflected upon for a week or a day or an hour, but it means an intent to kill executed by the defendant in a cool state of the blood, in furtherance of a firm design to gratify a feeling of revenge or to accomplish some unlawful purpose, and not under the influence of a violent passion suddenly aroused by some provocation," sufficiently defines the word "deliberately." (Distinguishing State v. Fairland, 121 Mo. 137.)

5.  **Refusing Defendant's Instructions:** WHEN NOT ERROR. If the instructions given, whether at the instance of the State or by the court of its own motion, present the case in all its features fairly to the jury, it is not error to refuse all instructions asked by defendant.

6.  **Presumption of Innocence:** KILLING OF WIFE. There is no presumption of innocence in favor of a defendant charged with killing his wife beyond the general presumption of innocence which attaches to all persons charged with crime. (Following State v. Soper, 148 Mo. 217.)

7.  **Jury:** SUMMONS AND PANEL. An objection that a jury has been improperly summoned and impaneled, comes too late when made for the first time in a motion for a new trial.

8.  **Cross-Examination of Defendant:** NO OBJECTION IN MOTION FOR NEW TRIAL. An objection that the court permitted the State to cross-examine the defendant about matters to which he did not testify in chief, can not be raised for the first time in an appellate court, but must be raised in the motion for a new trial.

*Appeal from Platte Circuit Court.*—HON. W. S. HERNDON, Judge.

AFFIRMED.

GUY D. PARK and BLAKE L. WOODSON for appellant.

(1) The word "feloniously" is used in the court's fourth instruction as an ingredient of the offense and nowhere defined in the instructions. State v. Deffenbacher, 51 Mo. 26; State v. Weldon, 70 Mo. 572; State v. Hayes, 105 Mo. 76; State v. Brown, 104 Mo. 366; State v. Johnson, 111 Mo. 578; State v. Ellis, 74 Mo. 207. (2) The fifth instruction assumes that

the pocket knife shown to have been used in this case was a "deadly weapon" and the instruction, as applied to the facts in this case, is otherwise incorrect and misleading. State v. Neuslin, 25 Mo. 111; State v. Harper, 69 Mo. 425. (3) The court nowhere defines what is meant by "just cause of provocation," and thus leaves a question of law to the jury. State v. Jones, 20 Mo. 64; State v. Dunn, 18 Mo. 419; State v. Ellis, 74 Mo. 219. Nor does the court properly define "deliberately" and the other elements which constitute murder in the first degree. State v. Fairlamb, 121 Mo. 137. (4) The defendant was entitled to instructions on his own testimony, which were not given in this case. State v. Bank, 73 Mo. 592. (5) In passing upon the apprehensions of the defendant at the time of the cutting, the jury had a right to know whether they might consider the conduct or actions of the deceased and any other person or persons they believed to be acting with her. Therefore the court should have instructed (as asked by defendant) in the eleventh instruction, "that in passing upon the defendant's apprehension at the time as to whether defendant was justifiable in acting upon appearances in cutting the deceased, Maggie Grant, the jury may take into consideration the acts and conduct of said Maggie Grant on the day of the cutting, as well also the acts and conduct of any and all persons present acting in connection with the said Maggie Grant, if they believe that others were present, so acting with her." (6) The record shows that there were two indictments returned against defendant in the case—the first, numbered on the docket of the court 1591, was returned December 15, 1897; the second, on the eleventh of August, 1898. That on indictment 1591 continuances were had, and on the tenth day of August, 1898, an order was made by the court for the sheriff to summons forty veniremen from which, and the regular panel, to select a jury for the trial of said case number 1591; that there was no other indictment then pending against defendant except the one numbered 1591, and that he

State v. Grant.

had been duly arraigned and entered his plea of "not guilty" to said indictment on the eighteenth day of December, 1897, three days after said indictment had been returned into court and filed therein; that after said additional veniremen had been summoned and examined as to their qualifications, a new indictment, numbered 1610 on the docket of said court, was returned against the defendant and no copy furnished defendant; that during the selection of the panel of forty veniremen defendant was requested to plead to said new indictment number 1610, and on the same day, to wit, August 12, 1898, trial proceeded under indictment number 1610 and verdict rendered on the thirteenth of August, 1898. Defendant was, under the law, entitled to a panel of forty men, summoned and examined under indictment numbered 1610, upon which he was tried and convicted, and the verdict ought not to be permitted to stand because his triers were summoned, examined and qualified under one indictment, numbered 1591, and he was tried and convicted under another and different indictment, numbered 1610. Defendant did not voluntarily waive any legal right.

EDWARD C. CROW, Attorney-General, for the State.

The defendant made no objection to the panel of forty nor to the twelve jurymen at the time they were selected, but made his objection for the first time in his motion for a new trial. The objection that a jury has not been legally summoned or impaneled comes too late, if made for the first time in a motion for a new trial. State v. Sansone, 116 Mo. 1. There is no suggestion anywhere that the forty summoned, or the twelve selected, were not qualified or that they were summoned by one not competent or authorized or one who was prejudiced. The only suggestion is that the panel of forty was ordered summoned before the return of the second indictment. But it will be observed the record shows that the defendant made his challenge and the jury of twelve were

selected after the defendant had been arraigned upon the second indictment. Under the law of this State governing criminal trials the defendant had the right to a panel of forty qualified jurors and the right when such panel was obtained to challenge twenty of them peremptorily after the State had executed its right to challenge eight. The record shows that neither of these rights was either denied the defendant or in any way impaired, and hence no rights of the defendant were denied him. State v. John Matthews, 98 Mo. 123. The defendant had no right to have the forty jurors summoned by a special venire issued after the second indictment had been returned. It is not necessary that a special venire be issued for a jury in a capital case. State v. Samuels, 3 Mo. 68; State v. Cavanaugh, 76 Mo. 53; State v. Jones, 61 Mo. 232. If no objection is made at the time to the manner in which the jury has been returned (as none was made in this case) it is too late after verdict to object. The defendant will be held to have waived his right even if he had had a valid objection. State v. Klinger, 46 Mo. 224; State v. Gilmore, 95 Mo. 554. The objection offered to the jury would have been a challenge to the array. It is too late to make this objection for the first time in a motion for a new trial unless positive injury is shown therefrom. Thomas on Trials, sec. 113. Right to challenge array is waived by a challenge to polls. The defendant exercised his privilege of a challenge to the polls and this waived his right to challenge the array. Thompson on Trials, secs. 91 and 114.

BURGESS, J.—Defendant was indicted and convicted in the Platte Circuit Court of murder in the first degree, for having at said county on the night of the twenty-second day of October, 1897, stabbed to death with a pocket knife, his wife, Maggie Grant. He appeals.

At the time of the homicide defendant, who is a negro, and his wife and one Charles Caldwell who married his wife's

sister, lived in adjoining property in Kansas City, Missouri.

The parents of the two women and a brother, who was reputed to be sick, lived in Parkville, Platte county, a small town on the Kansas City, St. Joseph & Council Bluffs Railroad, about twelve miles north of Kansas City. On the twentieth of October, 1897, the wives of Caldwell and defendant with the permission of their respective husbands went to Parkville to see their sick brother. On their arrival they stopped with a sister, Mrs. Grant Hughes, who also lived in Parkville, and on the next day visited their sick brother, returning to the house of Mrs. Hughes about four o'clock in the afternoon where they remained until the homicide occurred.

About six o'clock in the afternoon of the twenty-second of October, Caldwell called at the place where the defendant worked and suggested that they go to Parkville that night, and said that he believed that the two sisters had misrepresented things to them, that their brother was not sick and that there was to be a dance he thought at Parkville, and that was the reason the women wanted to go. The defendant then agreed to accompany Caldwell to Parkville on the 9:15 train that night. Caldwell suggested that his coat was so light he did not want to carry his pistol with him and asked the defendant to carry the same, saying that he would carry the bottle of whiskey with which he had provided himself. This the defendant consented to do, and the two went to the station to take the train to Parkville, and arrived there about ten o'clock. The defendant had never been to Parkville before, and Caldwell, not knowing where the brother lived, started direct to the house of Grant Hughes, his brother-in-law, where the wives of the defendant and Caldwell were. To reach this house from the station, it was necessary to go up a hill, then down through an open piece of ground and across a small drain through the gate into the yard of the house. It was dark, and as defendant and Caldwell moved down the hill towards the house, they saw a woman's figure pass in at the door

of the house, which faced east, and about this time some man passed the defendant and Caldwell, coming away from the house. This aroused the anger of the defendant and he rushed into the house and into the kitchen and then pulled out his pistol and Caldwell's wife and Hughes' wife seized him, and with the assistance of others present disarmed him. Defendant then became quiet and apologized to those present for his misconduct. Deceased was in the north room of the house at the time, there being two rooms, one of which faced east. The door from the outside opened into this room, which was separated from the kitchen by a small partition. The kitchen was located in the south end of the house, and was reached by a doorway through the partition.

After defendant had apologized for the disturbance he had caused in the house, deceased stepped from the front into the kitchen room, and, defendant testified, beckoned to him to follow her, which he did and that when he got close enough to her for her to do so, she threw her arms around his neck and shoulders and tried to throw him down, at the same time calling on her sister for help. That she was stronger than he was. That he begged her to release her hold upon him, and finally told her that if she did not let go of him he would cut her loose, and that with his right hand he got a knife from his pocket and cut her once in the breast with it, because he feared others were coming to help her, and that he would be thrown down and killed.

The court over the objection and exception of defendant instructed the jury as follows:

1. The indictment in this case is of itself a mere formal accusation and is not of itself any evidence of the guilt of the defendant, and no juror should permit himself to be in any way influenced against the defendant because or on account of the indictment in the case.

2. Before they can convict the defendant they must believe and be satisfied of his guilt beyond a reasonable doubt.

In this connection the court further instructs the jury that to authorize you to acquit upon reasonable doubt alone, such doubt must be a substantial doubt of defendant's guilt, and not a mere possibility of his innocence.

3. The law clothes the defendant with the presumption of innocence, which attends and protects him through every stage of the proceeding against him until it is overcome by the testimony which proves his guilt beyond a reasonable doubt. It is not enough in a criminal case to justify a verdict of guilt that there may be strong suspicion or even strong probabilities of the guilt of the defendant, but the law requires proof by legal and credible evidence of such a nature that when it is all considered it produces a clear and satisfactory conviction of defendant's guilt, and unless the State has so proven the guilt of defendant in this case he is entitled to a verdict of not guilty.

4. If you believe and find from the evidence in this case that the defendant, Charles Grant, at the city of Parkville, county of Platte, and State of Missouri, on or about the twenty-second day of October, 1897, did feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought make an assault upon Maggie Grant, with a certain knife, and then and there with said knife feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought did kill the said Maggie Grant, by stabbing her upon her breast and body, and thereby inflicting upon her a mortal wound, of which said wound she, within a year and a day thereafter, died at the said city of Parkville, in the county of Platte and State of Missouri, during the month of October, 1897, and was thus killed by the stabbing aforesaid, as charged in the indictment, then you will find the defendant guilty of murder in the first degree, and will so state in your verdict.

5. He that willfully, that is, intentionally, uses upon another at some vital part, a deadly weapon, must, in the absence of qualifying facts, be presumed to know that the effect

is likely to be death, and, knowing this, must be presumed to intend death, which is the probable consequence of such an act, and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly and from a bad heart. If, therefore, you find and believe from the evidence in this cause, that the defendant took the life of Maggie Grant by stabbing her in a vital part with a knife, and that said knife is a deadly weapon, with manifest design to use such weapon upon her, and with sufficient time to deliberate, and duly form the conscious purpose to kill her, and without sufficient or just cause or provocation, then such killing is murder in the first degree. And while it devolves upon the State to prove the willfulness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder in the first degree, yet these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and if you can satisfactorily infer their existence from all the evidence, you will be warranted in finding the defendant guilty of murder in the first degree.

6. If the jury believe from the evidence that the defendant, in Platte county, Missouri, on or about the twenty-second day of October, 1897, with a certain knife, willfully, premeditatedly, and of his malice aforethought, but without deliberation, stabbed his wife, Maggie Grant, and that said Maggie Grant, thereafter and prior to the filing of the indictment in this case, to wit, August 11, 1898, died from the effects of said stab, then the jury will find the defendant guilty of murder in the second degree and assess his punishment at imprisonment in the penitentiary at not less than ten years.

7. If you believe from the evidence the defendant to be guilty of either degree of murder, but entertain a doubt as to the degree, you should give the defendant the benefit of the doubt and find him guilty of murder in the second degree.

8. If you believe and find from the evidence that defendant killed the deceased by a thrust inflicted with a knife not likely to kill and that he did so without any desire to kill the deceased and without malice as that term is defined in these instructions then the crime is manslaughter in the fourth degree, and the question whether the knife, testified to having been used by the defendant in this case, is or is not a deadly weapon, is a question of fact for the jury to determine.

9. If you find the defendant guilty of manslaughter as defined in these instructions you will fix his punishment at imprisonment in the penitentiary for two years, or by imprisonment in the county jail not less than six months, or by a fine of not less than five hundred dollars, or by both a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months.

10. As used in this indictment, and these instructions the terms willfully, deliberately premeditatedly and malice aforethought are defined as follows: Willfully means intentionally, not accidentally. In the absence of qualifying facts and circumstances the law presumes that a person intends the ordinary and probable results of his acts and conduct. Deliberately means in a cool state of the blood; it does not mean brooded over or reflected upon for a week or a day or an hour, but it means an intent to kill executed by the defendant in a cool state of the blood, in furtherance of a firm design to gratify a feeling of revenge or to accomplish some other unlawful purpose, and not under the influence of a violent passion suddenly aroused by some provocation. Premeditatedly means thought of beforehand for any length of time, however short. Malice does not mean mere spite or ill will or dislike as it is ordinarily understood, but means that condition of the mind which prompts one person to take the life of another without just cause or provocation, and it signifies a state of disposition which shows a heart regardless of social duty and

fatally bent on mischief.   Malice aforethought means that the act was done with malice and premeditation.

11.   The court instructs the jury that if they believe from the evidence that at the time of the cutting and killing of the defendant the defendant had good cause to believe and did believe, under all the circumstances and facts of the case, that deceased was attempting to hold him or throw him to the floor, with the intent either alone or with the assistance of others present to do him great bodily harm or to take his life and that the defendant apprehended and had good cause to apprehend that such purpose of the deceased either alone or with others, if they believe that others were acting with her, was impending and about to be executed on the defendant and that the defendant had good cause to believe and did believe at the time that it was necessary for him to cut the deceased in order to prevent such apprehended danger, then the jury should acquit the defendant on the ground that said cutting was done in self-defense, although such cutting resulted in the death of Maggie Grant, and the jury are further instructed that if they believe from the evidence that the defendant had good cause to believe that the deceased either alone or acting in connection with others present was about to do him great bodily harm or to take his life, and that the defendant so believing acted in a moment of apparently impending peril, it was not required of him to gauge the quantum or amount of force to be used.   The question to be determined by the jury from the evidence is not whether the cutting was actually necessary to protect the defendant from some great bodily harm or death or whether some other or lesser force might not have been adequate, but whether when the fatal cut was given defendant had under all the circumstances reasonable grounds to believe and did believe that such cutting was necessary to protect himself from immediate danger of great bodily harm or death.

12.   In passing upon the guilt or innocence of the defendant in this case the jury are directed to take into consideration the admission on the part of the State in this cause, that prior to the alleged offense charged in the indictment the defendant bore a good character as a peaceable, quiet, law-abiding citizen.   That the question of good character goes to the guilt or innocence of the accused, and is competent evidence to go to the jury, and be by them weighed in determining guilt or innocence; but if the jury believe beyond a reasonable doubt from the evidence, that of good character included, that the defendant is guilty as charged, then they should convict, although they may further believe that the defendant has heretofore borne a good character in the respects named.

13.   If the jury believe from the evidence that the relation of husband and wife existed between the defendant and the deceased at the time of the killing, then in addition to the presumption of innocence and the presumption arising from good character of the defendant, the law presumes defendant's innocence from the fact that the deceased was the wife of the defendant.

14.   The jury are the sole judges of the weight of the evidence and credibility of the witnesses.   In weighing the testimony of any witness the jury should take into consideration the interest of the witness in the event of the case, or otherwise, the manner of conduct of the witness in testifying, the probability or improbability of the testimony of such witness in view of all the evidence, facts and circumstances surrounding the case, and you should give to the testimony of each witness such weight as under all the evidence and surroundings you think it entitled to.   If the jury believe that any witness has willfully sworn falsely to any material fact or facts in the case they are at liberty in the exercise of their judgment to disregard all or any part of the testimony of such witness.

It is first claimed by defendant that the word "feloniously" is used in the fourth instruction as an ingredient of the offense, and as it was nowhere defined in the instruction it was erroneous.    While the use of the word was entirely unnecessary, it did not for that reason vitiate the instruction. It neither added to nor detracted from its force, and could not possibly have misled the jury or in any way prejudiced the rights of defendant.    As was said in State v. Scott, 109 Mo. loc. cit. 232:  "The word 'felonious' is descriptive of the grade of the offense, rather than the criminal act which constitutes the offense, and ordinarily has no place in an instruction.    When used it is most frequently but a repetition of what is expressed in other and simpler words.    In such case it is hardly possible that the accused could be prejudiced by the use of the word.    So, in the instruction complained of here, the word 'feloniously' scarcely has a definable meaning, as used, and could have been altogether omitted without affecting, in the least, the correctness and sufficiency of the instruction."

The contention that the fifth instruction assumes that the pocket knife with which the homicide was committed was a "deadly weapon" is not we think supported by the record. Upon the contrary it left it to the jury to determine.    It in effect told them that if they believed from the evidence that defendant took the life of deceased by stabbing her with a knife, and that said knife was a deadly weapon, etc., thus submitting in clear, and unequivocal terms, the very question which it is now claimed that it did not.    Moreover, the same question was again and more clearly if possible presented by the State's seventh instruction.    The criticism is without merit.

It is further claimed that while the court used the words "just cause of provocation," it nowhere defined what is meant thereby, and in failing to do so, left a question of law to the jury.    If there was just cause of provocation for the killing

in this case so as to reduce it to a less grade of offense than murder in the first degree, there would be much more merit in defendant's contention, but the evidence adduced shows an absolute want of such cause or provocation. [State v. Ellis, 74 Mo. loc. cit. 220.] Defendant can not, therefore, claim that the court erred in failing to define something that did not exist, and which was incapable of definition. The court might, it is true, have instructed the jury, that as a matter of law there "was no just cause of provocation" for the killing, but this would have availed defendant nothing, hence he was not prejudiced by its failure to do so. As a matter of law there "was no just cause of provocation" for the homicide, and it was entirely unnecessary under the circumstances for the court to define the meaning of those words.

It is also claimed that error was committed in defining the word "deliberately," and State v. Fairlamb, 121 Mo. 137, is relied upon as supporting this contention. But there is a marked distinction in the definitions given in the two cases. In that case the court instructed the jury that "the word deliberately as used in the indictment and in the instructions, means a cool state of blood," and stopped there, and it was held that the definition was erroneous in that it did not go far enough, and it was pointed out in what particular, while in the case at bar the jury were told that "deliberately means in a cool state of the blood; it does not mean brooded over or reflected upon for a week or a day or an hour, but it means an intent to kill executed by the defendant in a cool state of the blood, in furtherance of a firm design to gratify a feeling of revenge or to accomplish some other unlawful purpose, and not under the influence of a violent passion suddenly aroused by some provocation," thus relieving it of the objection urged against it. [State v. Wieners, 66 Mo. 13; State v. Fairlamb, supra, and authorities cited.]

There was no error committed in refusing instructions asked by defendant, as those given presented the case in all of

State v. Grant.

its features very fairly to the jury, and this being the case it makes no difference that they may have been given at the instance of the State, or by the court of its own motion.

It may not be improper to say, however, that the thirteenth instruction is no longer the law of this State (State v. Soper, 148 Mo. 217), but as this was an error in favor of defendant he is in no position to complain.

Among the instructions asked by defendant and refused was one in which the court was asked to instruct the jury that in passing upon the defendant's apprehension at the time as to whether defendant was justifiable in acting upon appearances in cutting the deceased Maggie Grant, the jury may take into consideration the act and conduct of said Maggie on the day of the cutting, as well also the acts and conduct of any and all persons acting in connection with the said Maggie, if they believe that others were present, so acting with her, and this is also assigned for error.

But this question was fully covered by the instructions which were given hence there was no error in refusing another covering the same ground.

There were two indictments returned against the defendant in this case; the last one after he had pleaded to the first and a *venire* of forty summoned from which a jury was to be selected to try the case. When the new indictment was returned defendant pleaded to it, and proceeded with the selection of a jury from the original panel and the trial of the cause, without objection. He now claims, however, that he was under the law entitled to a panel of forty men summoned and examined under the last indictment, under which he was tried and convicted, but this objection was raised for the first time in the motion for a new trial, and came too late. The objection that a jury has not been legally summoned or impaneled comes too late when made for the first time in a motion for a new trial. [State v. Sansone, 116 Mo. 1.]

State v. Grant.

In the assignment of errors by defendant it is asserted that error was committed in several instances in permitting different witnesses to testify with respect to statements and acts of his before the homicide, and one conversation with a certain witness thereafter, but we are not favored with any suggestion or reason in defendant's brief why the evidence was inadmissible, nor has any occurred to us.

It is finally claimed that error was committed in permitting the prosecuting attorney to cross-examine the defendant, with respect to matters to which he did not testify in chief, but no such point was raised in the motion for a new trial, and can not be raised for the first time in this court.

The proof was clear as to defendant's guilt, the only question being as to the grade of the offense. The instructions were for murder in the first and second degree, and manslaughter in the fourth degree.

Of these grades the jury found him guilty of the highest and we are not prepared to say that the evidence was not sufficient to justify them in so doing. There was no justification or excuse, for the homicide, nor was there any mitigating circumstances connected with it. It seems to have been a willful and deliberate homicide, and the jury having so found we can but affirm the judgment, and order the sentence to be executed.

GANTT, P. J., concurs; SHERWOOD, J., absent.