THE STATE v. BILL HANNEBRINK, Appellant.—44 S. W. (2d) 142.

Division Two, December 1, 1931.

*W. E. Coffer* for appellant.

*Stratton Shartel*, Attorney-General, for respondent; *Lawrence Presley* of counsel.

WHITE, P. J.—An indictment returned in the Circuit Court of Cape Girardeau County charged that, February 15, 1930, Bill Hannebrink and Howard Henson committed a felonious assault upon Sam Davis and Sherman Davis, using a deadly weapon with intent to kill. The trial was had September 11, 1930. After the jury was sworn the State announced that it would elect to proceed for the assault upon Sam Davis, and not for that upon Sherman Davis. Defendants objected. Objection overruled and defendant excepted. The trial proceeded for the assault upon Sam Davis alone. At the close of the evidence *nolle prosequi* was entered as to Howard Henson. Bill Hannebrink was found guilty by a jury and his punishment assessed at three years in the penitentiary. He was so sentenced and in due time and form he appealed.

The difficulty occurred at a roadside store called "I Love You Grocery" owned and operated by Fred Hannebrink, an uncle of the defendant. It was late in the afternoon, after dark. It appears that Bill Hannebrink and the Davises had been drinking and had had difficulties that same afternoon. Sam Davis had got out of jail that morning about nine o'clock. He was a single man, and owned a "shack" which it appears he had rented to Henson. Late in the afternoon Sam Davis and Sherman Davis went to the place and found there Henson and Roy Sides. Sam Davis told Henson he would like to have his house. Two other men came and a fight ensued in which Sam Davis knocked one of the other men down. Later he had a fight with Henson. The latter difficulty was made up, the two shook hands; probably were drunk enough to forget the fight. Sam Davis, Sherman Davis and Howard Henson then drove in Davis's car to Hannebrink's store, parked the car, went in, and Sam Davis bought a bottle of soda and some cigarettes. Several were there. Henson and Bill Hannebrink went outside, were gone for a time, later came back and called Sam Davis out for the purpose of settling an argument they had had. Sam Davis and Sherman Davis started outside when Bill Hannebrink struck Sherman with a lug wrench, knocking him senseless. Sam attempted to interfere when Bill struck him on the head with the wrench knocking him unconscious. Upon recovering consciousness the Davises went to the doctor's office. This was the story told by Sam Davis and Sherman Davis, except Sherman did not know anything that happened after he was hit. There was other evidence indicating that both the Davises were struck and kicked by Bill Hannebrink after they were down.

Dr. Fuerth testified that Sam's wounds were flesh wounds and did not injure the skull; that it required three or four stitches to stitch up the largest laceration, the wound on top of the head; it could

have been made by any blunt instrument which would tend to tear and snap the skin.

It was shown on cross-examination of Sam Davis that he was released from jail for the purpose of testifying in this case. He had been convicted two days before for fighting; he had received two convictions in the Federal court for violating the prohibition law; he had been in jail in Arkansas; he had served a term in the Missouri penitentiary. It was shown also that Bill Hannebrink, the defendant, had had fights, and had been in difficulties with the law.

I. The Attorney-General in his brief calls attention to the number of errors assigned in the motion for new trial, and points out that a much smaller number have been carried forward and treated in the appellant's brief. He says that the State will, therefore, treat all errors not considered in appellant's brief as abandoned. The Attorney-General cites several cases from this court which support that conclusion. If he had pursued his inquiry a little further he would have found that in later unanimous rulings we have held that we must consider errors properly preserved in the motion for new trial, whether presented in appellant's brief or not. [State v. Peters, 6 S. W. (2d) 838; State v. Davis, 12 S. W. (2d) l. c. 427.]

Section 3760, Revised Statutes 1929, provides:

"No assignment of error, or joinder in error, shall be necessary upon any appeal or writ of error, in a criminal case, issued or taken pursuant to the foregoing provisions of this article; but the court shall proceed upon the return thereof without delay, and render judgment upon the record before them."

We are not at liberty to ignore the plain mandate of that statute. If no errors are assigned in this court we must consider the record for errors properly preserved. How, then, can we say that if some errors apparent and excepted to in the record are not assigned in this court we have the liberty to refuse to consider them? If an appellant is so unfortunate as to be represented by counsel who either through incompetence or carelessness fails to present in his assignment of errors here some matter vital to a determination of the case which was acted upon erroneously by the trial court, we are not at liberty to follow his misleading neglect.

In none of the cases cited by the Attorney-General did this court refuse to consider a reversible error merely because not assigned in the briefs of appellant. A test of this question would arise if this court refuses to consider a reversible error committed on the trial merely because not assigned in the brief here. Or, if the question were raised whether the attorney for appellant in his brief here had assigned a reversible error in such way as to justify its examination,

though the record showed it was properly preserved at the trial. Would this court in such case be justified in holding that we could not consider it because inadequately presented in the brief? Certainly such ruling would be in direct violation of the statute. This does not mean that it is necessary to treat every assignment of error in the motion for new trial. It *is* necessary to examine them; if they are frivolous or do not merit treatment, they may be dismissed from further consideration with that statement.

II. It is claimed in appellant's brief that the indictment is bad for uncertainty.

Section 3537, Revised Statutes 1929, provides that when an indictment is found the foreman of the grand jury shall certify that it is a "true bill," and endorse thereon his name and the word "Foreman." The indictment here was not so endorsed, nor signed by the foreman of the grand jury. It was signed by the prosecuting attorney.

In State v. Mertens, 14 Mo. 94, 1. c. 97, this court had under consideration an indictment with just those omissions. It was held that the purpose of requiring the endorsement "a true bill" and the signature of the foreman was to secure the authenticity and genuineness of the indictment, and when the indictment had been returned into open court and filed as a true bill among the records the whole object of the statute was attained.

That ruling has been many times approved in later decisions. [State v. Hays, 78 Mo. 1. c. 603; State v. Harris, 73 Mo. 287, 1. c. 289; State v. Sadowski, 256 S. W. 1. c. 756; State v. Majors, 237 S. W. 1. c. 488.] In each of those cases it was held that such an objection to the indictment after verdict came too late. In this case the record recites that on the 7th day of the April Term, 1930, of the Circuit Court of Cape Girardeau County, came the grand jurors of said county and returned into open court a true bill against Bill Hannebrink and Howard Henson, which true bill was No. 3013, and the court ordered it filed and *capias* issued. Then follows copy of the indictment.

Appellant does not particularize what he claims to be uncertain in the indictment, which with sufficient certainty charges facts which constitute an offense under either Section 4014 or Section 4015. No complaint was made and none made now that it charged the assault was made upon Sam Davis and Sherman Davis, as if the same assault was upon both. After the elimination of Sherman Davis it remained as a charge of felonious assault against Sam Davis only, and the trial was so conducted. No complaint is made that the indictment charged that the same assault was made by both defend-

ants with the same weapon. The complaint as to some uncertainty, not specifically pointed out, comes too late after verdict.

III.   There was no objection to the dismissal as to Henson, but appellant in his motion for new trial complains of error by the court in allowing the indictment to be in effect amended by dropping the charge of assault on Sherman Davis, on the ground that it changed the nature of the indictment and deprived the defendant of evidence showing that he struck Sherman Davis in self-defense.

An indictment cannot be amended by the prosecutor.   Was the dropping of the charge as to the assault upon Sherman Davis an amendment of the charge of assault upon Sam Davis?   When the State elected to proceed as to the assault upon Sam Davis only, all allegations regarding the assault upon Sherman Davis was mere surplusage, to be disregarded.   [State v. Hoyt, 324 Mo. l. c. 843.] It did not change the nature of the charge on which the trial proceeded, the assault upon Sam Davis.   The defendant was not thereby deprived of his right of self-defense.   He still had a right to show and did attempt to prove that Sherman Davis first assaulted him, that he struck Sherman Davis in self-defense and did not strike Sam Davis at all.

IV.   Sam Davis, on cross-examination, was asked if he ate at Bill Hannebrink's house after the trouble; if his pistol did not fall out of his pocket, and Fred Hannebrink's wife made him get out of the house.   To those questions he answered no, that he had not been to Hannebrink's house since the trouble.

Defendant's witness Ernest Rosenberry was asked if he was at that place and if Sam Davis was there after the trouble in February. He answered yes.   Then he was asked what took place.   An objection of the State was sustained.   The defendant claimed that the testimony was competent to impeach Sam Davis.   The court held that it was not competent, because it was an attempt to impeach him upon an immaterial matter.   The defendant then offered to prove that while Davis was there he stooped over and a revolver fell out of his pocket and Mrs Hannebrink ordered him out of the house.   The court was entirely correct in saying that it was an attempt to impeach upon an immaterial matter.   It threw no light on the occurrence at the time of the alleged assault.   It was not material to the issue whether Davis carried a pistol, thus committing another offense, for which Mrs. Hannebrink ordered him out of the house.

263

V. Appellant assigns error to the remarks of the court made at the time he excluded the evidence. We cannot find in the motion for new trial any error assigned to the remarks of the court in excluding that evidence.

VI. Error is assigned to the reception of the testimony of Dr. Fuerth. He was asked whether or not in his opinion a blow dealt across the head with a lug wrench would produce a wound similar to that on Davis's head. The court overruled the objection to the question and the Doctor answered that a wound of that sort might be caused by any blow; "the skin on the scalp is tense and anything that would tend to tear it might snap the skin; could be from cutting or from a blunt instrument; evidently it was not a pointed instrument." Whether the question was calculated to draw an improper answer or not the answer of the Doctor was clearly competent, an explanation of the character of the wound and what might have caused it.

When Fred Hannebrink was on the stand for the defendant he was asked about his relations with Hilda Hoffman, his housekeeper, and if he persuaded her to change her story or in any way tried to influence her story. There was no objection to the question. He was then asked if he had talked to her about the case; that question was objected to and the objection overruled, but the witness did not answer. No error appears there, though error is assigned.

VII. It is claimed further that the court should have sustained a motion for new trial on the ground of newly-discovered evidence. The attorney for defendant attaches his affidavit to the motion in which he says three witnesses, William Stewart, Charles Crites and Lillian Crites, saw the trouble, and he believed the statements they made in their affidavits attached were true. The affidavit of each of those witnesses attached to the application stated that when the fight occurred, February 15, Howard Henson struck Sam Davis on the head with a soda-pop bottle, and that Bill Hannebrink didn't strike Davis. The evidence which it is said these witnesses would produce is cumulative; two or more witnesses introduced at the trial swore to those same facts. The motion for new trial could not be sustained on the ground of newly-discovered evidence.

VIII. Instruction numbered 1 given for the State is in the usual form telling the jury if they should find beyond a reasonable doubt

that Bill Hannebrink, with malice aforethought, with a dangerous and deadly weapon, did make an assault upon and strike Sam Davis with an intent to kill, they should find him guilty, ''and unless you do so find you should acquit the defendant of such charge.''

Then the instruction tells the jury to disregard the case as to Henson, that he is not now charged with the offense, and adds: ''That should not prejudice you against the State.'' It is this last expression which the appellant objects to as making the instruction erroneous. It is an unfortunate expression to put in an instruction. Of course the jury should not be prejudiced against the State, nor against the defendant in any event. That expression meant only that the dismissal of the case against Henson should not affect the judgment of the jury as to Hannebrink. All the instructions sufficiently required a finding of facts which would authorize a verdict of guilty against him. We do not think that the instruction was harmful.

IX. Objection to instruction numbered 2 on the ground that it was assumed that a weapon used was dangerous and deadly, a controverted issue. The instruction directs the jury that if they believed that ''the defendant, Bill Hannebrink, with a dangerous and deadly weapon, if you believe and find such weapon was used, did strike Sam Davis in and upon his head and body,'' etc. That required the jury to find that such a weapon was used. The further objection is that it uses the word ''body'' when there was no evidence to show that Davis was struck upon the body. As we understand the term, the head is a part of the body, and the evidence shows he was struck several times upon the head. If the instruction meant blows were struck upon other parts of the body should be proved in addition to blows upon the head, before the jury could find the defendant guilty, it put an additional burden upon the State. The language used was ''upon the head *and* body.'' If the jury were required to find that Davis was struck upon the head and also struck upon the body it required the State to prove more than necessary in order to secure conviction.

A number of other errors are assigned, for which we find no basis in the record.

The judgment is affirmed. All concur.