State v. Sapp, Appellant.—No. 40261.—203 S. W. (2d) 425.

Division One, June 9, 1947.

Rehearing Denied, July 14, 1947.

706

*Howard F. Major* and *Ralph L. Alexander* for appellant.

708

*J. E. Taylor,* Attorney General, and *Frank W. Hayes,* Assistant Attorney General, for respondent.

710

CONKLING, J.—Appellant, Joe Sapp, was convicted in Boone County of first degree robbery of a taxi cab, valued at $900.00, and $18.00 in money from one Mabrey, a taxi driver. Upon the jury's verdict he was sentenced to imprisonment for five years and has appealed. His defense was insanity. All the testimony he introduced was upon the insanity plea.

Appellant and his companion in the commission of the robbery, one Pemberton, on the evening of January 15, 1945, sat in a hotel room in Columbia, Missouri, and discussed the proposed robbery by them of two jewelry stores. They also discussed the best means of leaving each jewelry store if they should be interrupted in such robbery. When they left the hotel, they walked the streets trying to find an automobile to steal but could not find one whose owner had left an ignition key therein. Going to the Campus Cab office they purported to hire a taxi cab which they intended to seize at the point of a gun. The taxi driver was told to drive them to Midway, a small community about six miles west on Highway 40, toward Boonville. The taxi driver picked up two girls to make the drive with him. The girls rode in the front seat with Mabrey. Appellant and Pemberton rode in the rear seat of the taxi. Near Midway a gun was held at Mabrey's head, and he was told to drive off on a side road and stop. Naturally, he complied. When the taxi came to a stop, the five persons in the cab alighted and came into the glare of the headlights of the taxi cab. Appellant held the gun on Mabrey and said to Pemberton, "We had just as well take his money." Mabrey handed over $18.00 of taxi receipts belonging to his employer, one Wigham.

Mabrey and the girls were told to walk on up the side road and not be seen on the main highway for fifteen minutes. Naturally, they complied. Appellant and Pemberton re-entered the taxi cab, backed it onto the main highway and drove toward Boonville, Missouri. Before the taxi reached Boonville it was turned off the road and apparently abandoned, and the two men asked a passing motorist to take them on into Boonville to the Frederick Hotel. They told such

motorist that the lights on their car had gone out. When the men alighted from that automobile in Boonville, they went in the opposite direction from the hotel. Avoiding the main streets, they found their way by side and untravelled streets to Highway 40 and continued their flight walking west from Boonville. They were arrested by a deputy sheriff and returned to Columbia by a highway patrol officer. Appellant at first denied his identity but later admitted to the officer that they intended to steal a car, could not find one with keys in it, and that with the intention of "sticking up" a cab driver and taking his car and money, had engaged the taxi cab to take them to Midway. Mabrey and the two girls identified appellant. Pemberton also testified as to details of the hold up, and as to the conversation and other facts which preceded the purported hiring of the taxi cab. None of the above stated facts were denied.

The appellant waived his preliminary hearing. The original Information alleged the automobile and money taken from Mabrey were the property of Mabrey, but before trial the Court permitted the State to amend the Information by interlineation to charge that the money and taxi cab taken from Mabrey were the property of Wigham. Appellant now contends he was not granted a preliminary examination upon the charge upon which he was tried, citing State v. Fuser, 75 Mo. App. 263. In that case the amended Information described an offense committed long after the original Information was filed. It is no authority here. In the instant case the amendment of the Information merely changed the allegation as to the ownership of the taxi cab and money taken. It did not affect or change the offense charged ██ nor the evidence which might be required to defend against the charge of robbery. The amendment was one of form and not of substance. It was not error to permit it to be made. State v. Long, 324 Mo. 205, 22 S. W. (2d) 809.

After the State had introduced its case in chief establishing all the essential elements of the offense charged, appellant then introduced the testimony of three doctors and nineteen lay witnesses. All of such testimony was introduced by appellant as tending to establish his defense of insanity. After appellant had then rested his case in chief, he thereupon filed a motion to suppress the testimony of Doctors Ault and Thomas. Such motion was based upon the theory that prior to the trial the above named physicians had examined and treated appellant at the appellant's request and in a professional capacity, and that the facts and information thus obtained was privileged. Appellant contends that permitting the doctors to testify was in effect compelling appellant to give testimony against himself in violation of Section 19 of Article I of the Constitution, and R. S. Mo. 1939, Sec. 1895. The trial court overruled the motion to suppress. Doctors Ault and Thomas did testify.

712

The trial court did not err in permitting the testimony of Doctors Ault and Thomas. In support of his defense of insanity appellant in his testimony in chief had offered the testimony of Doctors Gildea, Satterfield and Smith, all of whom treated and examined appellant after the commission of the offense and before the trial. In so offering the testimony of such physicians, who treated and examined him as to his mental condition, appellant waived his right to object to the testimony of Doctors Ault and Thomas. Appellant could not be permitted to call as witnesses only those doctors whom he desired to call, and then claim the right to object as to other doctors who treated and examined him for the same condition. State v. Long, 257 Mo. 199, 165 S. W. 748, Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709, Wells v. City of Jefferson, 345 Mo. 239, 132 S. W. (2d) 1006. Appellant's privilege under the Constitution and the statute was personal and could be waived by him. State v. Mosier, 102 S. W. (2d) 620, 628. The right to object to the testimony of Doctors Ault and Thomas was waived under the instant facts. The assignment of error is overruled.

■ It is next assigned as error that instruction S-3 given by the Court to the jury and fully covering the issue of insanity required the jury to find insanity "to the reasonable satisfaction of the jury" before appellant could be acquitted upon the ground that he was insane when the offense was committed. Instruction D-8, given at appellant's request, and also covering the insanity issue, told the jury that positive and direct proof of insanity was not required, but that if there was circumstantial evidence of insanity "which *reasonably satisfies* your minds of its existence at the time of the commission of the particular act", that the same would be sufficient to acquit. Instruction D-8 further charged the jury "it is not necessary to establish this defense (insanity) beyond reasonable doubt, but it is sufficient if you are *reasonably satisfied* by the weight or preponderance of the evidence", that appellant could not distinguish right from wrong with respect to the offense charged. The form of this instruction as submitted to the jury in S-3 has been approved by this Court. State v. Duestrow, 137 Mo. 44, 38 S. W. 554, State v. Barbata, 336 Mo. 362, 80 S. W. (2d) 865. The Court in this case in the above mentioned instructions fully and completely instructed the jury upon the subject of insanity. See State v. McCann, 329 Mo. 748, 47 S. W. (2d) 95. In passing upon the sufficiency of insanity instructions, we must consider the instructions as a whole, particularly as they deal with the same subject. They must be read together. State v. Murrell, 169 S. W. (2d) 409, 413. When all the instructions given by the Court upon the subject matter of insanity are considered together they are correct and wholly sufficient.

■ Further complaint is made of instruction S-3 that it assumed that appellant robbed Mabrey. Instruction S-1, submitting ■ to

the jury all the essential elements of the State's case required an affirmative finding by the jury of all such essential elements of the offense as a predicate to a verdict of guilty. Instructions must be read together and are sufficient if they present the law of the case when so construed. State v. Smith, 355 Mo. 59, 194 S. W. (2d) 905, State v. Talbert, 354 Mo. 410, 189 S. W. (2d) 555. The defense here was insanity. There was no denial of the commission of the offense. Such a defense is in the nature of a confession and avoidance. It is in effect an admission of the commission of the crime but in the nature of avoidance because appellant, if insane, did not have and could not have had a criminal intent because mentally incapable of such criminal intent. Appellant cites State v. Jordan, 306 Mo. 3, 268 S. W. 64, and State v. Warren, 326 Mo. 843, 33 S. W. (2d) 125. Those cases were distinguished from the instant facts in State v. Barbata, supra, wherein we said: "These cases are clearly distinguishable from the instant case in that in each instance the defendant denied the fact assumed as uncontradicted; whereas, in the instant case, the sole plea of insanity, of necessity, confesses the act, and, under the only relevant purpose of the plea, appellant (by reason of his insanity) seeks to be held not legally responsible for the act." Here upon the sole issue of insanity appellant admitted the facts relating to the commission of the offense and sought to be held not legally responsible therefor. The assignment is overruled.

■ It is appellant's further position here that several isolated paragraphs of instruction S-3 failed to charge the jury that appellant should be acquitted if the jury found that he was insane at the time of the commission of the offense. The question cannot be ruled upon one or more isolated paragraphs lifted bodily out of the instruction and thus held up for criticism. An instruction must be considered in its entirety and if the entire instruction when judicially examined correctly presents the law, an assignment as to an isolated paragraph, which considered alone might be misleading, must fail. State v. Cain, 31 S. W. (2d) 559. Instruction S-3 plainly charged in its second paragraph that if "at the time" of "the robbery charged in the information" the defendant was insane, the jury should find him not guilty. Instruction S-3 did not conflict with instruction D-8. Each of the instructions, S-3 and D-8, authorized acquittal if the jury found defendant insane at the time of the commission of the offense.

■ It is further contended by appellant that instruction S-3, by charging that "mere weakness of intellect or subnormal mental capacity or the mere inability to resist the impulse or the irresistible impulse to commit the criminal act, if not the result of a mind so diseased that it cannot distinguish between right and wrong, do not constitute an excuse or defense to a crime" thereby ascribes mere weakness of intellect or subnormal mental capacity to appellant. In this record

714

there is much evidence that appellant had a weak intellect and a subnormal mental capacity. Standing alone and without more neither are legal insanity. State v. Pinski, 163 S. W. (2d) 785 (Mo. Sup.), State v. Jackson, 346 Mo. 474, 142 S. W. (2d) 45, 49. On the other hand, some of appellant's witnesses said he had a good intellect and a superb mental capacity. We rule that it was proper under the facts presented by this appeal for the jury to be told in the manner above set out what did and what did not constitute legal insanity. The test applied in Missouri has been many times stated by this Court. See State v. Pinski, supra, State v. Jackson, supra.

■ Appellant further contends that that portion of instruction S-3 quoted in the last preceding paragraph did not limit the "right and wrong" test to the particular offense for which appellant was on trial, and thus required appellant to prove total and general insanity. We cannot agree to this contention. Again appellant isolates a very small paragraph of the instruction for complaint. This cannot be done. Quigley v. St. Louis Public Service Co., 201 S. W. (2d) 169, 170. The instruction must be considered as an entirety. It does not fail, as heretofore pointed out, to authorize an acquittal if the jury found appellant legally insane at the time of the ■■■ commission of the offense. The point is ruled against the appellant.

■ Error is next urged in the giving of instruction S-3 because it is claimed that appellant was entitled to have the jury instructed therein that inability of appellant to resist the impulse to commit the criminal act with which he was charged should be a defense cognizable in Missouri courts. We are unable to agree with that view. With patience we have read the record before us including the testimony adduced in support of appellant's plea of insanity. With patience we have studied the cases and texts cited by appellant's learned counsel in the brief. The range of the testimony of the learned men of medicine, psychiatrists and general practitioners, of the clinical psychologists and personality experts, and of the laymen called by appellant as witnesses upon the insanity issue covered a field almost as wide as the human imagination. The range that the evidence may take in exploring the subject is almost unlimited, except as noted in State v. Jackson, supra. Some of the testimony adduced by appellant's witnesses established that appellant was legally insane and had no capacity to distinguish right from wrong. as to the act charged. Other of his testimony established that appellant had a very bright mind but at times was somewhat introverted. "Between the two extremes of 'sanity' and 'insanity' lies every shade of disordered or deficient mental condition, grading imperceptibly one into another." Wiehofen, "Partial Insanity and Criminal Intent", 24 Ill. Law Review, 505, 508. But the testimony, and its wide range, were for the jury. In the administration of justice the courts cannot indulge in the refinements and subtleties of the metaphysician. We see no reason

to depart from the rule and the doctrine to which this state has heretofore adhered and which has stood the test of time in the every day tragic experiences of men. In State v. Jackson, supra, we said: "In Missouri and a majority of the other states the mental test for criminal responsibility is whether the accused was capable of distinguishing right from wrong as applied to the particular act. Mere irresistible impulse is not an excuse. In other words, we do not recognize the defense of 'volitional insanity' (meaning that although the accused can distinguish between right and wrong, still he is unable because of mental disease to resist the impulse to commit the criminal act)." In State v. West, 346 Mo. 563, 142 S. W. (2d) 468, we said: "The doctrine of 'irresistible impulse' as an excuse or defense for crime, at least unless due to a diseased mind—in effect, insanity—is not recognized in Missouri." Instruction S-3 fully and properly covering the insanity issue was given by the Court of its own motion. Thereafter, at appellant's request the Court gave instruction D-8 covering the same issue in some slightly enlarged and different phrasing. In some respects instruction D-8 was quite liberal and very favorable to appellant's view. But it correctly states the law. We fail to see any just ground for appellant's complaint. The objections as to the insanity instructions must be overruled.

Appellant complains also that instruction S-1, submitting the essential elements of the State's case predicates a verdict of guilty without including any reference to the defense of insanity. But we note that the instruction requires of the jury a finding of criminal intent by the use of the words, "with the intention of converting said money and personal property to his own use, or to deprive the owner of his property therein, if you so find". Such required finding in the instruction was sufficient to negative insanity. If the robbery was committed with an *intent* to deprive the owner of his property therein, appellant must have been sane when he did it. Otherwise, if insane, the appellant manifestly could not have had such criminal intent. The instruction is not subject to the objection urged. State v. Douglas, 312 Mo. 373, 278 S. W. 1016, State v. Murphy, 338 Mo. 291, 90 S. W. (2d) 103, 112. Further complaint against instruction S-1 is that such instruction assumed, instead of requiring the jury to find that appellant used a pistol to put Mabrey in fear of his life, and assumed other facts necessary to the State's case. We do not so read the instruction. The instruction hypothecates and requires the jury to affirmatively find all facts therein recited. It begins with "if you find and believe from the evidence". After reciting the facts submitted it closes such recitation with "if you so find." The requirement "if you so find" also followed each recited fact. We find the objection to be without merit. State v. Hannenbrink, 329 Mo. 254, 44 S. W. (2d) 142, State v. Talbert, 354 Mo. 410, 189 S. W. (2d) 555.

716

■ Instruction S-2 fully and correctly covered the law of the case as to presumption of innocence of appellant and the burden of proof required of the State. However, complaint is now made that the instruction "authorizes a verdict of guilty without embodying and including the defense of insanity." The instruction did not authorize or predicate a verdict at all. It merely stated the law of Missouri upon presumption of innocence and burden of proof. There was no place in such an instruction to include the defense of insanity, and there was no need to do so in instruction S-2. Insanity was fully covered in other instructions and all must be considered together.

■ Error is next assigned by appellant that the Court erred in refusing to give his offered instructions D-4 and D-9. The former instruction told the jury that appellant was entitled to a fair trial and could not be convicted upon suspicion. The latter was substantially a counterpart of appellant's given instruction D-8 upon the insanity issue. The substance of each was covered by other instructions given by the Court. But the propriety of their refusal is not before us because appellant's assignments with respect thereto in his motion for new trial are too vague to merit consideration under the Statute. R. S. Mo. 1939, Sec. 4125, Mo. R. S. A. Sec. 4125, State v. West, 349 Mo. 221, 161 S. W. (2d) 966

■ Appellant also assigns as error the refusal of his requested instruction D-10 upon the insanity issue. But all of the matters in this instruction were more fully set out and instructed upon in instruction D-8 which was given by the Court at the request of appellant, and in instruction S-3. No citation of authority is necessary. The refusal of the instruction could not possibly be error.

■ It is further assigned as error by appellant that the hypothetical questions asked by the State of certain medical witnesses, Doctors Thomas, Robinson and Hoctor, were not proper hypothetical questions because they did not contain sufficient facts respecting appellant's history, and because the facts assumed therein were not submitted as the acts of appellant. These assignments present the most difficult questions upon this appeal. Substantially the same questions were asked of each of the three doctors, the same objections made to each question, the same assignments were made with respect thereto in the motion for new trial and in the brief filed here. This point, therefore, as to the questions propounded to the three doctors may be jointly examined and considered.

The question asked by the State of each of the three medical witnesses named is somewhat limited in scope. The facts included in the hypothetical question begin with the time the appellant and Pemberton were sitting in the hotel room on the evening of the crime discussing the hold up of the jewelry stores. The facts hypothecated terminate with appellant's statements made to the arresting officers. Often hypothetical questions in insanity cases include facts covering back-

ground, personal history, behaviorisms during adolescence and like factors. But under the circumstances of the instant case it was not imperative that all those matters be included. It affirmatively appears from the record that the facts stated in the question, facts respecting the use of the usual method of holding up and stealing a taxi such as ostensibly hiring a taxi to be driven to a certain destination, taking the taxi for purposes of flight, hitchhiking a ride after the taxi broke down, denial of identity, continued flight from the scene of the crime, and other included facts indicated in no uncertain terms to a medical mind the sanity of the accused. It appears, therefore, that there were enough facts in the question to enable men of medicine to reach an opinion respecting appellant's sanity at the time the crime was committed. ▮▮▮ The State had a right to frame its own hypothetical questions upon its own theory and solely upon its own evidence. There was no duty on the Prosecuting Attorney in this case to include in his hypothetical questions all the wealth of detail in the record respecting defendant's adolescent years. Appellant's counsel on cross-examination had the right to ask other hypothetical questions of these doctors and to include therein all such facts appearing of record and favorable to appellant's contention as they may have desired to incorporate therein. Appellant had the same right to ask his medical witnesses proper questions based upon appellant's theory of the evidence and the case. State v. Douglas, supra. Appellant in his brief and upon oral argument here vigorously contends the Court erred in overruling his objections to the hypothetical questions to these three doctors, but cites no authority. He likewise fails to point out any part of the questions which the court should have stricken out. He mentions no facts which should have been included although when the question was asked Doctor Robinson, appellant's counsel was invited to suggest any omitted facts. Neither upon the trial nor in his motion for new trial did appellant suggest any specific facts which should have been included. No suggestion is made in appellant's brief as to anything specific which should have been included. Upon a careful reading and re-reading of the testimony of the three doctors and upon close examination in the light of appellant's contention, we have reached the conclusion that there was no prejudicial error in the admission of the testimony. State v. Ring, 346 Mo. 290, 141 S. W. (2d) 57, State v. Tarwater, 293 Mo. 273, 239 S. W. 480, State v. Ferguson, 278 Mo. 119, 212 S. W. 339, State v. Douglas, supra, State v. Hyde, 234 Mo. 200, 136 S. W. 316.

Further objection is made to the hypothetical question propounded each of these three medical witnesses because several times in the question the Prosecuting Attorney used the word "they" instead of the words "the defendant", thus including Pemberton as well as appellant. A careful examination of the record discloses that the plural "they" was used only in describing the movements or actions of

718

appellant and Pemberton in (1) entering and riding in the taxi cab, in (2) reaching Midway, in (3) directing Mabrey where to stop, and in (4) taking the taxi cab to escape the scene of the hold up. In the entire transaction, and particularly in the four respects above noted, appellant and Pemberton acted in concert with each other. Considering the objection from the standpoint of whether harm could have resulted from asking the question in that form, we fail to see how any witness could possibly have been confused as to whose sanity was in issue. Neither could the jury have been confused as to who was on trial in the case nor as to whose sanity was in issue. Under the circumstances in the record before us the point made is without substance and is ruled against appellant.

We find no error in the record. The defendant had a fair trial. He was ably represented. He was allowed without restriction to introduce his evidence as to insanity. The Court properly instructed the jury with respect to insanity. It was the province of the jury to determine the issue upon all the testimony adduced. The judgment of the Circuit Court must be and is hereby affirmed. It is so ordered. All concur.