STATE of Missouri, Respondent,

v.

James David (J. D.) COX, Appellant.

No. 48969.

Supreme Court of Missouri,

Division No. 1.

Oct. 8, 1962.

J. D. Cox, appellant, pro se.

Thomas F. Eagleton, Atty. Gen., Manuel Drumm, Special Asst. Atty. Gen., Jefferson City, for respondent.

HYDE, Judge.

■ Defendant was convicted of assault with intent to kill with a deadly weapon with malice aforethought and given a sentence of eight years in accordance with the verdict of the jury. (See Section 559.180 RSMo, V.A.M.S.) Defendant has appealed but filed no brief so we consider all assignments made in his motion for new trial in accordance with Supreme Court Rule 27.20, V.A.M.R. (See also Rule 28.02.)

■ The assignments allege error in rulings on evidence, refusal of an offered instruction and other trial rulings. There is no contention made (and none reasonably could have been made) concerning the sufficiency of the evidence to make a case for the jury. Therefore, reference to the facts will be made in connection with the rulings challenged, except for the following brief statement of the situation, as shown by the evidence of the State and the evidence of defendant.

Defendant was forcibly ejected from the Travelux Tavern (hereinafter referred to as the Tavern) in Jackson County on the night of March 25–26, 1960, by Harry E. Campbell, door man, and other tavern employees, and told not to come back. About 12:25 A.M., March 27th, Campbell with another employee, Beckett, came to the tavern for duty and saw defendant there. Campbell walked to where defendant was standing at which time defendant inquired of Campbell why he (defendant) had been thrown out of the tavern the night before. Campbell replied that the management did not want him there and that defendant would have to go out again. Defendant pulled a pistol out of his right pocket and fired three shots which struck Campbell. Beckett then shot at defendant with a shotgun, his second shot shooting the pistol out of defendant's hand as he was aiming again at Campbell. Defendant had testimony (from his brother's wife) that Campbell took hold of his shoulder and said that he had heard that defendant was looking for him. Defendant replied that he wanted to know why they both jumped on him last night and then Campbell hollered out, "Shoot the son-of-a-bitch." Beckett fired a shotgun from behind the bar, his first shot striking defendant in the right hand, then defendant grabbed his gun with his left hand and tried to shoot back.

■■ Assignments 1 and 6 claim error in permitting reference by the State to the wounding of Karen Routh, who accompanied defendant and others with him to the Tavern on the night of the shooting. Those who came there with defendant were his brother, his brother's wife, Karen Routh, Bill Allbright and a girl called Nancy. Defendant's brother and wife and Karen were sitting in a booth when the shooting started and Karen was struck by a bullet, apparently from defendant's pistol. The first mention of this was in Campbell's direct testimony when in answering a question he said, after the shooting was over, somebody said "there was a girl shot." Objection by defendant's counsel to this was sustained as hearsay but when Campbell was asked: "Did you actually see this girl that had been shot," there was no objection and he said he did. Likewise, there was no objection to two subsequent questions as to where she was and what he observed. However, when another witness told about Karen being shot, defendant's counsel objected and asked the court to instruct the jury to disregard all

testimony with respect to shooting of Karen and also asked the court to declare a mistrial. Thereafter, defendant's counsel objected each time any such reference was made. However, as we said in State v. Bell, 359 Mo. 785, 788, 223 S.W.2d 469, 471: "This evidence was properly admitted as a part of the res gestae. It did not relate to separate and distinct crimes, but parts of a continuous occurrence intimately connected with the crime for which defendant was being tried." See also State v. Moore, Mo.Sup., 353 S.W.2d 712, 713, and cases cited. Defendant's assignment 8 claiming error in allowing endorsement of Karen Routh as a witness at the trial is without merit, in any event, because she was not called as a witness, State v. Johnson, 349 Mo. 910, 163 S.W.2d 780, 783. Assignments 1, 6 and 8 are overruled.

■■ Assignments 2 and 5 claim error in restricting cross-examination of Campbell as to where he was and what he did on the evening of March 26th before he went to the Tavern about midnight and as to previous claimed illegal gambling activities at the Tavern. The court did permit much cross-examination concerning Campbell and Beckett being together at another tavern earlier in the evening and coming together to the Tavern where the shooting occurred, bringing the shotgun with them from Campbell's home. (Campbell said they brought the shotgun because they heard of threats made by defendant.) Campbell was asked if he ran a dice game at the Tavern and said he did not. Objection to defendant's counsel thereafter arguing with him about it was sustained as were also objections to his questions about running dice games in other places. No connection of gambling with the events of the night involved appears. "The court is invested with much discretion, and necessarily so, in determining the extent of cross-examination," State v. Turner, Mo. Sup., 320 S.W.2d 579, 584, especially as to collateral matters. State v. Winn, Mo.Sup., 324 S.W.2d 637; State v. Shilkett, 356 Mo.

1081, 204 S.W.2d 920. We have carefully read the cross-examination of this witness and the court's rulings and hold there was no improper restriction of this cross-examination. Assignments 2 and 5 are overruled.

■ Assignments 3 and 4 involved testimony as to what was done after the shooting by other employees of the Tavern at the hospital, where defendant was taken, to prevent him from getting a blood transfusion; and as to threats received by defendant's brother's wife by telephone at home later that night, she having recognized the voice of the person calling. Defendant's offer of proof as to the threats was that, after defendant's brother and his wife returned to their home from the hospital where defendant was taken, she received a telephone call from a Tavern employee saying they had already got defendant and were coming to get them. This was a subsequent collateral matter involving a third party not involved in the assault charged, and who did not testify, throwing no light on what occurred at the time of the alleged assault by defendant. See State v. Hannebrink, 329 Mo. 254, 44 S.W.2d 142. Concerning the hospital incident, a deputy sheriff, called as a witness by defendant, testified about occurrences at a hospital to which defendant and Campbell were taken after the shooting. He said there was a fight there and he arrested defendant's companion Allbright and ordered two Tavern employees (Baer and Wishman) and others out of the hospital. There was no testimony that Baer and Wishman were at the Tavern at the time of the shooting but, after the deputy told about clearing the hospital, defendant's counsel asked him the following question: "Officer Smith, at the time that you were at the hospital was the plasma needle pulled out of J. D. Cox's arm?" Objections and rulings were as follows: "MR. GANT: Your Honor, I object to the question, first, on the ground it is certainly leading and suggestive and improper. Secondly, it

doesn't prove or disprove any facts or issues in this case. THE COURT: Sustained. It is too remote. We are concerned with what happened at the Travelux Tavern. MR. COMBS: All of this officer's testimony is of happenings within one or two hours. THE COURT: The objection is sustained. You are going too far." Thus it is apparent that no offer of proof was made to show any relation of this claimed incident to the assault or to anyone connected with it or with the Tavern. The court's ruling was correct on the showing made. Assignments 3 and 4 are overruled.

■ Assignment 7 restates defendant's objection to the admission of evidence showing Miss Routh was shot, complained of in preceding assignments, and says the court's rulings against "any inquiry from the defense about matters before or after the shooting or outside the Travelux premises" were arbitrary, capricious and unfair, arguing these matters were proper as "bearing upon credibility, integrity, turbulence, threats, connivance or defendant's reason for fear." We have found no error in the rulings complained of in the preceding assignments concerning occurrences before or after the shooting at other places away from the Tavern. We note that extensive cross-examination of Campbell was permitted to show his height, weight and boxing experience in Golden Gloves competition, his duties as door man at the Tavern, the details of the ejection of defendant on the previous night, and the participation of other employees in it. It was also shown on cross-examination that Campbell had been convicted in Iowa of carrying concealed weapons several years before, that he had previously worked as "bouncer" at another tavern; and that he had one or two beers that evening before he came to work at the Tavern on the night of the shooting. He was asked if he or any other Tavern employees had ever made threats against defendant and answered "no". Defendant's sister-in-law, who had once worked as a cook at the Tavern, was permitted to testify that Campbell had the reputation "of being a bully and wanting to fight"; and that he, with Beckett, Wishman and Baer, would "gang up" on others. Our view is that the record does not sustain the allegations of Assignment 7 and it is overruled.

■ Assignment 9 alleges error in refusal of defendant's requested Instruction A on self-defense. No claim is made that Instruction 5 given by the court on self-defense was incorrect; and it was more favorable to defendant than his offered instruction by stating that he would be justified in acting in self-defense "even if no real danger existed" if he "had reasonable cause to believe and did believe that it existed." Defendant's offered instruction commenced by hypothesizing the incident of the previous night, when defendant was ejected by Campbell and other employees, which as set out therein had no proper place in determining the issue of self-defense on the occasion of the shooting. The offered instruction also hypothesized acts of Beckett, rather than acts of Campbell, and its effect tended to be argumentative. See State v. Heath, 221 Mo. 565, 592, 593, 121 S.W. 149. Therefore, considering the whole submission, we hold it was not error to refuse it and assignment 9 is overruled. We have examined the record as required by Rule 28.02 and find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

All concur.