STATE of Missouri, Respondent,

v.

Thomas HUFFER, Appellant.

No. 24581.

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1968.

Taken as submitted by appellant.

No appearance for respondent.

HOWARD, Presiding Justice.

Defendant was convicted of common assault and sentenced to six months in the Buchanan County jail and a fine of $100.00. He has appealed to this court but has filed no brief. Since this appeal was submitted before the amendment of Criminal Rule 28.02, V.A.M.R., effective September 1, 1967, we will review the case under the provisions of such rule prior to amendment and will consider those points properly raised in defendant's motion for new trial, together with those matters required to be reviewed whether raised or not.

The events out of which this charge grew began about 5:15 P.M., on Sunday evening, May 16, 1965. Two cruising police officers of St. Joseph, Missouri, were stopped for a red light when they observed an approaching car being operated in an erratic manner. It pulled into and parked in a parking lot of a laundry and dry cleaning establishment and the officers followed and parked their car beside it. The officers determined that the car belonged to one Louis Mules and was being driven by an unauthorized person. The officers attempted to get word to Mules or his family and after about fifteen minutes, his stepfather arrived. The stepfather discussed the situation with the officers but declined to take the car away. After a further wait of ten to fifteen minutes, Louis Mules and the defendant, Thomas Huffer, half-brother of Mules, arrived on the scene. Mules had been drinking and, with considerable profanity, immediately demanded in a loud voice to know about his car and who had stolen it. He repeatedly stated that no one was going to tow his car and no one beside himself was going to drive it. He refused to listen to either officer Hayes or his stepfather, both of whom tried to calm him down and repeatedly explained that the car was not going to be towed away. After this had gone on for a while, Mules started toward his car and officer Hayes intercepted him and told him he was under arrest for being drunk and for disorderly conduct. Mules then struck officer Hayes in the face, telling Hayes that he (Hayes) was not going to move his car.

Mules was 6 feet tall and weighed 230–240 pounds and was much larger than officer Hayes who was 5 feet 8 inches tall. When he was hit in the face, officer Hayes asked his partner, officer Muehlenbacher, to get the billy club from the car. Muehlenbacher did so and gave it to Hayes who hit Mules at least once on the arm with the club but primarily used it to punch and jab with in an effort to subdue Mules and effect his arrest. The stepfather was trying to assist officer Hayes to subdue Mules but they were unable to do so. Hayes and the stepfather wrestled and struggled with Mules around the parking lot until other police officers arrived.

After Muehlenbacher gave the billy club to Hayes, he got behind Mules and grabbed him around the neck. At this point, the defendant Huffer entered the affray with the statement that they were not going to hurt his brother. Huffer grabbed officer Muehlenbacher, swung him around away from Mules and kicked him one or more

times. One kick struck officer Muehlenbacher in the groin or testicle area, rendering him unconscious for a short period. When he regained consciousness, officer Muehlenbacher made his way to the police car and radioed for help.

When Muehlenbacher fell to the ground, Huffer then approached the spot where Hayes and Mules were struggling. Mules had his hand behind Hayes' head and Hayes was bent forward. Huffer kicked Hayes in the face, across the bridge of the nose. Huffer also struck Hayes with his fist.

After officer Muehlenbacher radioed for help, he attempted to handcuff Huffer but failed. There were other young men present and the evidence is conflicting whether they were helping Huffer resist Muehlenbacher or attempting to restrain Huffer. In any event, Huffer left the scene with some others and was later apprehended at a house a short distance up the street. Additional police officers soon arrived and Mules was subdued.

During this course of events, a considerable crowd gathered. At the trial, a total of 16 witnesses testified and their testimony covers 245 pages of the transcript. There is great conflict in this testimony, both as to detail and as to basic facts. However, viewing all of the evidence in the light most favorable to the jury's verdict, as we are required to do, the jury would be amply justified in finding the facts as we have outlined them and such facts fully support the verdict of the jury. Therefore, defendant's contention that the trial court erred in overruling his motion for judgment of acquittal must be ruled against defendant.

■ Preliminarily, defendant complains that the trial court erred in refusing to permit his requested voir dire examination of a prospective juror after the state's challenge for cause had been sustained. This assertion is without merit and misconceives the purpose of voir dire examination, which is to obtain a jury of impartial individuals to try the fact issues of the case. Carter v. Rock Island Bus Lines, Inc., 345 Mo. 1170, 139 S.W.2d 458, and O'Brien v. Vandalia Bus Lines, Inc., 351 Mo. 500, 173 S.W.2d 76. In this search for an impartial jury, the voir dire examination enables the parties to develop information on which to base a challenge for cause and to permit the intelligent use of the peremptory challenges. State v. Miller, Mo., 207 S.W. 797. The trial court has broad discretion in controlling the voir dire examination, Olsten v. Susman, Mo., 391 S.W.2d 331, and this discretion extends to the granting of challenges for cause on grounds beyond those specifically set out in the statute. Johnson v. M.K.T.R. Co., Mo., 374 S.W.2d 1. Defendant does not have a right to any particular juror. His right is to have his case tried by an impartial jury. Even if we were to assume that the trial court erred in sustaining the challenge for cause, the defendant has not been injured and cannot complain as long as he was tried by an impartial jury. State v. Naylor, 328 Mo. 335, 40 S.W.2d 1079, and O'Brien v. Vulcan Iron-Works, 7 Mo. App. 257. In the case at bar, defendant does not contend that the jury as selected was not impartial. After the challenge for cause was sustained, there was no function to be performed by further voir dire examination of the prospective juror in question and the trial court did not err in denying defendant's request for further examination.

In this case, defendant was charged by an information in two counts. The first count charged an assault on officer Hayes and the second count charged an assault on officer Muehlenbacher. At the close of its evidence, the state elected to proceed on Count II (the assault on officer Muehlenbacher), and dismissed as to Count I. Defendant asserts error in the trial court's failure to quash the information because it charged two crimes and because it failed to charge a crime for the reason that there is no allegation of "malice aforethought" which is necessary to charge an offense

under Section 559.180, RSMo 1959, V.A. M.S. He also claims error in the failure of the trial court to require the state to elect before any evidence was introduced, thereby prejudicing defendant by permitting the introduction of evidence as to both assaults.

■ It is true that an allegation of malice is necessary to state a proper charge under the provisions of Section 559.180, supra; State v. Tolias, Mo., 326 S.W.2d 329; State v. Ivory, Mo., 327 S.W.2d 870; State v. Himmelmann, Mo., 399 S.W.2d 58; but there is no such requirement for alleging an offense under Section 559.190. The information validly charges an assault with intent to do great bodily harm, without malice, as that offense is denounced by said Section 559.190. State v. Gillespie, Mo., 336 S.W.2d 677. Therefore, this contention must be ruled against defendant.

■ The information does charge defendant with two separate and distinct offenses, in two counts. Absent specific statutory provisions therefor, or waiver by the defendant, one cannot be convicted of two separate and distinct crimes at the same trial, but the charging of two crimes in one information does not render the information bad as a matter of law. State v. Gholson, Mo., 292 S.W. 27, and State v. Terry, Mo., 325 S.W.2d 1.

■ The state was required to and did make its election between the two crimes charged in the two counts at the close of its evidence and before the defendant put on his defense. Defendant contends that the state should have been required to elect before any evidence was adduced. A motion to elect is directed to the sound discretion of the trial court. See State v. Grove, Mo., 204 S.W.2d 757; State v. Gant, Mo., 33 S.W.2d 970; and State v. Jackson, 17 Mo. 544. In the instant case, both assaults grew out of one transaction; they both occurred during one affray and were closely associated as to time. It would be impossible to give a complete evidentiary picture as to one assault without

admitting evidence as to the other assault. Under such circumstances, evidence of the entire occurrence would be admissible to give a complete picture of all the surrounding circumstances even if defendant had been charged with only one assault. See State v. Varner, Mo., 329 S.W.2d 623, and cases cited therein. In such circumstances, the trial court did not abuse its discretion by refusing to require the state to elect before any evidence was presented. See State v. Gant, Mo., 33 S.W.2d 970; State v. Brugioni, 320 Mo. 202, 7 S.W.2d 262; State v. Brown, 317 Mo. 361, 296 S.W. 125; State v. Gholson, Mo., 292 S.W. 27; State v. Morelock, Mo., 291 S.W. 1078; and State v. Whitman, Mo., 248 S.W. 937. The defendant was not prejudiced by the admission of evidence as to both assaults because such evidence was admissible regardless of when the state was required to elect. State v. Varner, Mo., 329 S.W.2d 623, and State v. Brugioni, 320 Mo. 202, 7 S.W.2d 262.

■ Defendant also alleges error in the action of the trial court in allowing the state to amend Count II of the information at the close of all of the evidence by adding the words "and body" to the allegation that defendant did "strike, beat and wound the said John Muehlenbacher in and upon his head". Such amendment was discussed by counsel and the trial court and allowed after the close of all of the evidence but apparently everybody overlooked the fact, as revealed by the transcript, that an amendment adding the words "and body" had been made without objection at the beginning of the trial and before any evidence was heard. In any event, the question of permitting amendments rests in the sound discretion of the trial court, State v. Grove, Mo., 204 S.W.2d 757, and where the amendment does not change the crime charged against defendant, we cannot convict the trial court of abuse of its discretion.

■ Defendant contends that the trial court erred in permitting cross-examination of defendant as to statements

he made at the police station the next morning because his direct examination did not touch on any statements he made at the police station the next morning. The state's evidence tended to show that after the assault, defendant was taken to the police station where he admitted kicking and striking officer Hayes and kicking officer Muehlenbacher. He was again interviewed the next morning and made the same admissions. On direct examination, defendant testified generally about the affray and specifically denied that he kicked officer Muehlenbacher. Section 546.260, RSMo 1959, V.A.M.S., provides that a defendant who takes the stand as a witness is liable to cross-examination as to any matter referred to in his direct examination and may be contradicted and impeached as any other witness. The state is not limited in its cross-examination of a defendant to an exact duplication of the direct examination. Here the substance of the charge was that defendant kicked officer Muehlenbacher. On direct examination, he denied that he kicked him. In such circumstances, the state's cross-examination could properly go to all details of the occurrence and to prior inconsistent statements of defendant pertaining to the subject to contradict and impeach defendant "as any other witness". See State v. Dill, Mo., 282 S.W.2d 456; State v. Dees, Mo., 276 S.W.2d 201; State v. Kaufman, Mo., 254 S.W.2d 640; and State v. Punshon, 133 Mo. 44, 34 S.W. 25.

■ After defendant had denied making such admissions at the police station, the state, in rebuttal, introduced an additional witness who again testified to these admissions. Defendant contends that it was error to permit this because the testimony was not proper rebuttal but was evidence properly admissible in chief. This evidence was cumulative and cannot be said to have prejudiced defendant. Also, the trial court has a broad discretion to permit evidence in rebuttal which would properly be admissible as part of the case in chief. When we remember that this evidence tended to contradict and impeach defendant as to the fundamentals of the charge against him, we hold that the trial court did not abuse its discretion. See State v. Feltrop, Mo., 343 S.W.2d 36, and State v. Dees, Mo., 276 S.W.2d 201.

■ During the examination of a doctor witness, the following testimony was elicited over the objection of defendant: "Q. * * * assuming that Officer John Muehlenbacher was kicked in the testicle area by a man wearing white sneakers, would such a blow render a man unconscious?" "A. It is possible." Defendant objected to the form of the question, contending that it was not a proper hypothetical question because it did not encompass all of the facts and did not embody sufficient facts. Defendant now also complains that the answer was not required to be based upon reasonable medical certainty. As is pointed out in State v. Liolios, 285 Mo. 1, 225 S.W. 941, this is not a true hypothetical question to which defendant's objections might properly be directed. Rather, it calls for expert testimony as to what results may scientifically follow from certain causes. The doctor did not purport to testify that Muehlenbacher was, in fact, rendered unconscious by the kick delivered by defendant. On the contrary, he only testified that a kick, such as that described in the question, could possibly, as a matter of scientific or medical knowledge, result in unconsciousness. Such expert testimony in the field of cause and effect is helpful to the lay jury in evaluating the factual evidence before them and has repeatedly been held proper. See State v. Rizor, 353 Mo. 368, 182 S.W.2d 525, State v. Williams, 337 Mo. 884, 87 S.W.2d 175, 100 A.L.R. 1503, and State v. Hannebrink, 329 Mo. 254, 44 S.W.2d 142.

■ Lastly, defendant complains of the giving of instructions 6 and 7, and of the refusal to give his instructions A and B. Instruction 6 covers defendant's right to defend a relative (here his half-brother Louis Mules) and equates that right to the right of self-defense. Defendant complains

that this instruction is erroneous because it does not include a definition of terms to guide the jury in determining whether or not Mules was "illegally resisting arrest", thereby permitting the jury to resort to surmise and conjecture in arriving at their verdict. Complaint is also made that the instruction did not advise the jury as to the amount of force reasonably necessary to effect the arrest of Mules. He also argues that Mules might have "legally brought on the difficulty" and contends that under such circumstances, "defendant had a right to come to his aid". After careful study, we have concluded that the instruction is proper. The words used in the instruction were ordinary everyday words which the jury would have no trouble understanding. In fact, any attempt at definition along the line defendant suggests would be more likely to confuse the jury, unnecessarily complicate the instruction, and obscure its meaning, than to be helpful and clarifying. Our supreme court has many times upheld instructions using similar words in comparable situations. See, among the many cases, State v. Tull, Mo., 375 S.W.2d 100, State v. Howard, 352 Mo. 410, 177 S.W.2d 616, State v. Freeman, Mo., 57 S.W.2d 1084, State v. Long, 201 Mo. 664, 100 S.W. 587, and State v. Bailey, 190 Mo. 257, 88 S.W. 733. Furthermore, there is no evidence in this record from which the jury could find in favor of the arguments of defendant, such as that Mules "legally brought on the difficulty" (Mules did not testify), and under such circumstances, no definition instructions are required, as is pointed out in such cases as State v. Grant, 152 Mo. 57, 53 S.W. 432, and State v. Jacobs, 152 Mo. 565, 54 S.W. 441. We, therefore, conclude that this instruction did not permit the jury to resort to surmise and conjecture and is not erroneous in the manner defendant claims.

Instruction No. 6 is the credibility instruction. It contains the following sentence about which defendant complains: "In determining the credibility and weight of the testimony, you should apply your common experience in the affairs of life, and give to the testimony of each witness just such weight and credit as, under all of the facts and circumstances in evidence, you deem it fairly entitled to receive." Defendant contends that directing the jury to "apply your common experience in the affairs of life" gives the jury a roving commission, fails to fix a standard to guide the jury and permits the jury to resort to surmise and conjecture. Our research has revealed no case in which such wording has been criticized. The same or similar provisions have been commonly used in credibility instructions. Credibility is a matter peculiarly within the province of the jury and it is one of the chief virtues of our jury system that it brings to bear on factual disputes the common experience of a representative group of the community. This instruction amounts to no more than telling the jurors to use their common sense in determining questions of credibility. We conclude that the instruction is not erroneous in the manner claimed by defendant.

Instructions A and B, offered by defendant and refused by the court, were both instructions on defense of a relative. This subject was fully covered by Instruction No. 6, given by the court and which we have heretofore found not to be erroneous. The trial court did not err in refusing to give these two instructions when the same subject was fully covered by another given instruction.

The information is in proper form and is not erroneous in the manner complained of by defendant, which we have heretofore discussed. The verdict and judgment are in proper form and responsive to the issues. There was allocution and the sentence imposes punishment within the limits provided by law. Finding no error, the judgment below is affirmed.

CROSS, J., concurs.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.