**STATE of Missouri, Respondent,**

v.

**Gary M. MORRIS, Appellant.**

**No. KCD 26899.**

Missouri Court of Appeals,
Kansas City District.

Dec. 30, 1974.

Willard B. Bunch, Public Defender, Sixteenth Judicial Circuit, Robert A. Simons, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER, WASSERSTROM and TURNAGE, JJ.

DIXON, Chief Judge.

On April 9, 1973, Gary M. Morris was tried in the Circuit Court of Jackson County, Missouri, for the crimes of burglary, second degree, and stealing. The jury returned a verdict of guilty and fixed punishment at two years in the custody of the Missouri Department of Corrections for each crime. He was sentenced accordingly, and he appeals.

The single point presented on appeal questions the sufficiency of the evidence to sustain the conviction. Defendant contends that the only evidence linking him with the alleged crimes was the uncorrobo-

rated testimony of two accomplices, whose testimony he claims was inherently suspect. In reviewing a question of the sufficiency of the evidence, this court views all the evidence, whether direct or circumstantial, in a light most favorable to the State, accepts all favorable inferences reasonably to be drawn therefrom, and rejects all contrary evidence and inferences. State v. Petrechko, 486 S.W.2d 217 (Mo.1972); State v. Harris, 485 S.W.2d 612 (Mo.1972).

■ The evidence presented on behalf of the State showed that shortly after 1:00 a. m. on November 9, 1972, Officer Bidwell of the Kansas City Missouri Police Department observed two subjects running through a fenced-in lot at 3325 Raytown Road. This fenced-in lot encloses the D and G Sandblasting Company and the rear of a building occupied by Jim's Transmission Shop. The officer gave chase on foot and clearly saw that defendant was one of the subjects he was chasing. The subjects eluded the officer. After a one-hour search of the area, one Michael Corn was found hiding under some brush.

A tool box containing various hand tools and two jack stands were found in the D and G Sandblasting lot about twenty-five yards from Jim's Transmission Shop. The tools and jack stands belonged to Darrell Phillips, owner of Jim's Transmission Shop, and had been on the work bench in his shop when he had closed up several hours previously. Examination of the shop revealed that a window to the rest room had been broken out and the back door kicked open.

Michael Corn, testifying for the State, said that on the evening of November 8, 1972, he met defendant at a pool hall in Lee's Summit, Missouri. They shot some pool for a couple of hours and discussed "robbing" the transmission shop. Defendant told Corn they could get some tools there and then sell them. They left the pool hall, flagged down a friend who was driving by, one Allen Evinger, and went riding around. Defendant asked Evinger

if he wanted to make some easy money and help them, and Evinger responded that he did.

Evinger drove them to the transmission shop and let them out. He was told to return in thirty minutes. Corn and defendant then went to the back of the transmission shop, and defendant instructed Corn to break out a back window, which he did. Corn climbed through the broken window and let defendant through the garage door. They gathered up a box of tools and some jack stands. As they were leaving the building, they saw the police, dropped the tools and jack stands and began to run towards the woods. Corn testified he was later found in the wooded area, taken to the police station and interrogated. During this interrogation, he was reluctant to say that anyone else was with him, but finally, in response to a question asking whether defendant was involved, admitted that he was.

On cross-examination, he denied being threatened or assaulted by the police, denied that any promises were made to get him to make a statement implicating defendant and denied making a statement so that he could be released from jail. He admitted that he had never been charged with this crime but also said he understood that anything he might say could be used against him. He denied being told by police that they needed his help to convict defendant of a crime. He denied that only he and Allen Evinger were involved in this burglary.

Allen Evinger testified that on the evening of November 8, 1972, he was driving by a pool hall in Lee's Summit, when he was flagged down by defendant. Defendant mentioned something to him about making some fast money and told him that all he would have to do was drive. Evinger said he drove defendant and Corn to the transmission shop, let them out, drove on up Raytown Road, pulled behind a tavern and went to sleep. About thirty minutes later, he drove back to the transmis-

sion shop where he, too, was arrested. He was taken to the police station and interrogated. At first, he didn't tell the police anything, but finally told them everything that had happened and said that defendant and Corn were involved.

On cross-examination, he admitted that he had never been charged with this crime but denied ever being told that he couldn't be prosecuted. In further answering defense counsel's cross-examination questions, the witness acknowledged that he had been told that nothing would be done to him if he acted as a witness. However, throughout the cross-examination, he also repeatedly said that he was merely told that it would help if he were a witness. He admitted that at first he had only implicated Corn and that it was only later, after the police had told him they figured someone else was involved, that he told them of defendant's participation. He denied that the police had ever told him that defendant was involved.

The defense was alibi. The defendant and his girlfriend, Kathy Manzanares, testified that they were together drinking at the 606 Club on Prospect Avenue on the night in question. She testified that she met defendant at the bar around 10:00 p. m. and stayed with him there until 1:00 a. m. When she left the bar, defendant was still there. Defendant testified he stayed at the bar until the 1:30 a. m. closing time, went to a friend's house for a few minutes and then took a cab to his home where he was arrested shortly after he arrived. He testified the cab picked him up near the bar at 2:30 a. m. or a quarter till three.

The defense presented evidence showing that a Yellow Cab driver had picked up a fare near the 606 Club on Prospect Avenue around 2:45 a. m., November 9, 1972. The driver of the cab was not a witness, and there was no direct testimony who the passenger was. The defendant testified that the cab driver who picked him up was Caucasian. The records of the cab company showed that a Negro cab driver picked up the fare near the 606 Club at 2:45 a. m., November 9, 1972.

Assuming arguendo that the only evidence linking defendant with these crimes was the testimony of the accomplices, Corn and Evinger, the evidence was substantial, and therefore, sufficient. "A conviction may be had on the uncorroborated evidence of an accomplice unless such testimony is so lacking in probative force as not to amount to substantial evidence." State v. Powell, 433 S.W.2d 33, 34 (Mo.1968). State v. Morgan, 453 S.W.2d 932 (Mo. 1970); State v. Tressler, 503 S.W.2d 13 (Mo.1973). The testimony of Corn and Evinger was not inherently suspect nor inherently incredible, was not so self-destructive as to rob it of all probative force, was not completely impeached and was such that reasonable men might believe it beyond a reasonable doubt. As such, it constituted substantial evidence of the defendant's guilt of the crimes charged. See State v. Harris, 295 S.W.2d 94 (Mo.1956).

■ Defendant contends the evidence tended to show that the accomplices implicated defendant in exchange for immunity for prosecution and that this made their testimony inherently suspect. The record is inconclusive on this issue of whether such promises were made, Corn denying any such promise and Evinger equivocating on whether such a promise had been made or not. Even assuming that a promise of immunity was made to both Corn and Evinger, the record is bereft of any evidence or inference that they were asked to testify other than truthfully. The mere supposed fact that immunity from prosecution was promised in exchange for their testifying did not cause their testimony to be insubstantial. Any such promise held out to induce an accomplice to testify affects only his credibility. State v. White, 126 S.W.2d 234 (Mo.1939); State v. Newman, 289 S. W. 831 (Mo.1926); State v. Midkiff, 286 S.W. 20 (Mo.1926). The determination of the credibility of the witnesses was solely for the jury. State v. Huffer, 424 S.W.2d

776 (Mo.App.1968) ; State v. Lock, 300 S. W. 698 (Mo.1927).

The evidence being sufficient to sustain a conviction, the judgment is affirmed.

All concur.